**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **NO. 1:16-CR-82** |
| | ) | |
| **v.** | ) | **(Judge Yvette Kane)** |
| | ) | |
| **DYLAN HEATHERLY,** | ) | |
| **aka "Daniel Sotherland"** | ) | |
| | ) | **(Electronically Filed)** |
| **Defendant.** | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Child pornography is devoid of any trace of social value and it inflicts serious and reprehensible harm upon the children exploited in its production. Defendant Heatherly has a deviant interest in the sexual abuse of children and sharing that abuse with other like-minded pedophiles for their mutual sexual gratification. The collection of child pornography he produced and distributed included images and videos of children being sexually abused, including prepubescent minors performing sex acts, and children as young as toddlers being raped, bound and penetrated by adults. The United States requests the Court impose a sentencing that reflects the seriousness of the defendant's conduct. The United States respectfully requests a sentence of 480 months in prison.

### A. Procedural History

On March 30, 2016, a grand jury sitting in Harrisburg, Pennsylvania returned a sealed 17 count Indictment against Dylan Heatherly and 13 other

1

defendants.   The initial Indictment charged Dylan Heatherly as John Doe 9, aka "Daniel Sotherland" in multiple counts of child exploitation offenses.  On May 11, 2016, the grand jury returned an 18 count Superseding indictment against Heatherly and 14 other defendants.  The Superseding Indictment charges Heatherly in Count 11 with Conspiracy to Receive and Distribute Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), Count 12 with Aiding and Abetting the Receipt or Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), Count 13 with Conspiracy to Publish a Notice or Advertisement Seeking Child Pornography, in violation of 18 U.S.C. § 2251(d) and Count 17 with Publishing a Notice or Advertisement Seeking Child Pornography.

On January 25, 2018, a jury convicted Heatherly of counts 11 and 12, acquitted him of count 17 and hung on count 13.  Sentencing is currently scheduled for June 6, 2019.

The United States Probation Office prepared a Pre-Sentence Investigation Report and determined Heatherly has a Criminal History Category I and a total offense level of 43.  *See* PSR ¶64.  Therefore, the advisory guidelines call for a sentence of life in prison.  *See* PSR ¶64.  However, due to the aggregate statutory maximum available in this case, the probation officer noted the guideline is 480 months.  *See* PSR ¶64.  The United States respectfully requests a 480 month sentence for this defendant.

2

### B. Factual Background

This case started in July 2015 when an undercover police officer in Toronto, Canada observed the live sexual abuse of Victim-1 in "Application A." "Application A,"[1] is designed for video conferencing on multiple device formats. To use this application, a user downloads the application to a computer, mobile phone or other mobile device (*e.g*., tablet) via direct download from the company's website. Once downloaded and installed, the user is prompted to create an account. "Application A" users can invite others to an online meeting "room." In each instance, both "Application A" and the targets are referring to the 10-digit number that specifically identifies an online location where each user can see and interact with the other users in the same room.

When a user chooses to enter a specific meeting room, the user enters the 10-digit number and enters the username that he wants to use on that specific occasion, which does not have to be the same as the account username. "Application A" does not require a certain number of characters for a particular

---

[1] The actual name of "Application A" is known to law enforcement and the defendants. This application remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the application will be identified herein as "Application A."

username.  Consequently, a user can create a name with a single special character, such as "#" or a single letter, such as "a."

During a meeting, users can show a live image or video of themselves to other users through the webcam feature.  Users may also display the contents of their own computer desktops to the other users in the room.  The ability to display their own computer desktops allows users to show videos and photos to other users in the room.  "Application A" also allows users to send text messages visible to all of the users in the room, or private messages that are similar to instant messages sent between two users.

"Application A" permits users to conduct online video conferences for free for a limited number of minutes.  Paid subscribers can conduct online video conferences for an unlimited amount of time.  Some "Application A" users with a paid account permit their rooms to be accessed without a password such that anyone who knows the room number can enter and leave the room at any time.

On July 22, 2015, Toronto law enforcement began monitoring an "Application A" room that Toronto law enforcement became aware of on July 10, 2015 as a room that showed child pornography. The Toronto UC observed a German user streaming a video from the "Tara" series, which depicts an adult male wearing a mask while he vaginally and orally rapes the prepubescent girl. During

the stream of that video, co-defendant William Augusta was logged into the room. The Toronto UC successfully recorded the stream of that video.

At approximately 18:37 EDT, co-defendant Augusta (utilizing user name "Guy Johnson") posted "Pennsylvania with a . . . toy if you can visit." Immediately thereafter, at 18:38 EDT, the German user who had been streaming the "Tara" series, began streaming a prerecorded video called "boy1.mp4" that depicted Augusta orally raping a prepubescent black child (hereafter Victim-1). The Toronto UC successfully recorded the stream of that video. While the video was streaming, Augusta commented, "mmmmmmmm now THIS is porn." Additionally, during the stream of that video, other users in the room commented on the video. For example, Defendant Sewell, a.k.a. "SexEducation8-13" commented, "rape the nigger baby!!!." After the video completed, Augusta posted, "if you liked that last hardcore vid that was recorded live, me and my fucktoy [age redacted] yr old [Victim-1's real first name]." Another user suggested to Augusta, "nice you should bring out your fucktoy."

The Toronto UC attempted to message Augusta via "Application A," but was unsuccessful. Between approximately 18:50 and 19:16 EDT, the Toronto UC was away from the computer and it was not recording, but the "Application A" room was still active and the UC was logged into that room. Upon returning to the computer, at approximately 19:17 EDT, the UC observed Augusta streaming the

live sexual abuse of Victim-1. Specifically, Augusta orally raped Victim-1 and also digitally penetrated Victim-1's anus. The live abuse stream continued until approximately 19:22 EDT when another user took over the screensharing function in Application A, which made that user's screen the dominate screen, and Augusta's screen was minimized for everyone. A few seconds later, Augusta's screen turned off. The Toronto UC was able to record the activity from approximately 19:17 EDT until the end of the stream.

On that same day, July 22, 2015, the Toronto UC contacted a Homeland Security Special Agent located in Phoenix, Arizona and advised that agent about the live-abuse activity just witnessed in "Application A." On that same day, July 22, 2015, the HSI agent served a summons on "Application A" for IP logs associated with the room in which Toronto UC had observed the live abuse. "Application A" quickly responded and provided the IP address, which geolocated to the Carlisle, Pennsylvania area and was registered to Comcast Communications. The HSI agent then served an "exigent circumstances" request on Comcast, which verbally provided the subscriber name, address and telephone number. Additional open-source checks confirmed that the subscriber residence was a multi-generational household that included a prepubescent child that matched the description and depiction of the child who had been viewed in "Application A."

On July 23, 2015, a Pennsylvania state search warrant was executed at the residence in Carlisle, PA. Victim-1 was rescued and subsequently confirmed that he had been repeatedly sexually abused by Augusta. Augusta was arrested, but refused to make a statement. Subsequent review of chat logs revealed that Augusta has told other like-minded pedophiles that he has been sexually abusing Victim-1 since Victim-1 was one-year-old.

The following is a relevant timeline of events that occurred in the "Application A" room before and during the live transmission. First, a user in Germany streamed a previously recorded video of Augusta sexually abusing Victim-1. During that stream, Defendants Augusta, Sewell, and Fensler commented on it. A few minutes later, Augusta brought Victim-1 in front of the camera and proceeded to sexually abuse him, including oral rape and digital penetration, for the next 22 minutes. During the live-stream, other defendants, and unindicted co-conspirators, commented on the sexual abuse in a way that encouraged the abuse to continue. While the Toronto UC did not start recording the video content until later, the UC was able to recover the chat log that began well before the UC started recording what she saw on her screen. Consequently, we have the following chat log that starts before the UC recording and continues after.

**<u>Previously Recorded Video of August Abusing Victim-1</u>**

18:38:16     From SEXeducation8-13 : rape the nigger baby!!!! (David Sewell)

18:38:33     From YngCanPigPerv : sorry guys (Non-U.S. target)

18:38:35     From YngCanPigPerv : lol (Non-U.S. target)

18:38:38     From YngCanPigPerv : its on now (Non-U.S. target)

18:38:48     From dirtypervy : rape that lil nigger

18:39:39     From Guy Johnson : mmmmmmmmmmmmmm now THIS is porn (Augusta)

18:40:29     From babyRaperSnuffer : nice vid (Matthew Fensler)

18:41:52     From Guy Johnson : if you liked that last hardcore vid that was recorded live, me and my fucktoy 6 yr old [Victim-1's real first name] (Augusta)

18:42:08     From SEXeducation8-13 : hot:) (David Sewell)

18:42:15     From micheal : mmmmmmmmmmmmmm

18:42:16     From SEXeducation8-13 : you are my idol (David Sewell)

18:42:19     From babyRaperSnuffer : nice you should bring out your fucktoy (Matthew Fensler)

18:44:24     From . : hey guys if the vid has sound please rember to MUTE ur MIC (Bruce Edgecombe)

18:44:37     From perv : any lil puss vids? (Non-U.S. target)

18:45:21     From . : luv anything BALD b/g brutal or consentual (Bruce Edgecombe)

18:46:18     From xxx to gl(privately) : hey man (Non-U.S. target)

18:46:37     From pervpred : nepi guys?

18:46:42     From d to gl(privately) : hot (Non-U.S. target)

18:46:51     From babyRaperSnuffer : luv nepi (Matthew Fensler)

18:47:08     From . : luvr it  storment c (Bruce Edgecombe)

18:48:32     From . : as u all can see i like a littl pan with my PEDOS (Bruce Edgecombe)

18:48:43     From h. loroc : any young teen vids? (Ed Westbury)

18:48:59     From SS Lorenz : Do (Non-U.S. target)

18:51:24     From YngCanPigPerv : I think my cam is working now? (Non-U.S. target)

18:51:25     From pervpred : ne1 else with wife or gf in the house

18:52:29     From nyc perv : 31 nyc perv here (Scott Lane)

18:52:38     From Big Dawg : Georgia?

18:54:06     From Guy Johnson : srry back if u messaged me (Augusta)

18:54:49     From Guy Johnson : did u guys like that video? (Augusta)

18:55:17     From dirtypervy : love some good boi rapping

18:55:22     From . :  GUy hot HOTTTTTTTTTTTTTT (Bruce Edgecombe)
18:55:59     From babyRaperSnuffer : fuck yea hot vid earlier (Matthew Fensler)
18:56:03     From Sla,NPerv : london? (Non-U.S. target)
18:56:38     From . : us mid wwst (Bruce Edgecombe)
18:58:05     From nyc perv : nyc anyone? (Scott Lane)
18:59:23     From nyc perv : anyone showing vids? (Scott Lane)
18:59:36     From New 'Phone : or live? (Non-U.S. target)
**18:59:44     From Daniel Sotherland : so appreciate if someone showed vids—**
**            need to bust before work (Dylan Heatherly)**
18:59:47     From nyc perv : i can do live tomorrow (Scott Lane)
18:59:56     From New 'Phone : with what? (Non-U.S. target)
19:00:15     From . : ask GUY if [Victim-1] is home (Bruce Edgecombe)

## Live Event Begins Here

19:00:25     From New 'Phone : [Victim-1] is home (Non-U.S. target)
19:01:00     From New 'Phone : we all watching guy johnson (Non-U.S. target)
19:01:05     From babyRaperSnuffer : turn off the video wtf? (Matthew Fensler)
19:01:06     From nyc perv : who is [Victim-1]? (Scott Lane)
19:01:25     From New 'Phone : Stop screensharing (Non-U.S. target)
19:01:41     From New 'Phone : guy has his [relative] [Victim-1] (Non-U.S. target)
19:01:42     From h. loroc : keep it (Ed Westbury)
19:02:34     From dirtypervy : thanks man
19:02:37     From dirtypervy : made me shoot haha
**19:02:46     From Daniel Sotherland : so close here (Dylan Heatherly)**
19:03:19     From letsdothisnowtoo1 : Look at that throbbing (Moises Marquez)
19:09:32     From jay : spread his ass cheeks (Non-U.S. target)
19:09:59     From babyRaperSnuffer : you should smack him around a couple of
             times (Matthew Fensler)
19:10:20     From nyc perv : let us hear the audio (Scott Lane)
19:11:03     From Andy : guy put the sound on (Non-U.S. target)
19:11:35     From nyc perv : make out with him (Scott Lane)
19:13:10     From lovefurrymen : there's one perv here (Non-U.S. target)
19:13:17     From nyc perv : show more face (Scott Lane)
19:13:27     From lovefurrymen : guy Johnston (Non-U.S. target)
19:13:46     From lovefurrymen : no child here! (Non-U.S. target)
19:13:56     From SS Lorenz : Sado (Non-U.S. target)
19:14:08     From cumslut perv : cams on please (Casey O'Dell)
19:14:58     From Pp : Spit in his face (Non-U.S. target)
19:15:44     From nyc perv : fuck him (Scott Lane)

19:15:53      From Andy : guu he needs to be fucked (Non-U.S. target)
19:17:58      From Andy : rape him (Non-U.S. target)
19:18:51      From b b_lv : how old is the boy (Non-U.S. target)
19:21:12      From nyc perv : 31 nyc perv here. fuck nephew. (Scott Lane)
19:21:49      From Irish pd : Age is nephew? (Non-U.S. target)
19:21:54      From Andy : guy some guys think this is a vid do something to prove
              it's live (Non-U.S. target)
19:21:58      From Andy : smack him (Non-U.S. target)
19:22:50      From . : [Victim-1] has his shirt on again (Bruce Edgecombe)

**Live Event Ends Here**

19:23:47      From Andy : get him to say hi andy (Non-U.S. target)
19:24:28      From nyc perv : lets see some fucking (Scott Lane)
19:25:52      From Dad Bear : hi guys
19:27:15      From nyc perv : anyone have vids? (Scott Lane)
19:27:44      From FlyingPerv : cunts? (Non-U.S. target)
19:27:50      From gl to Guy Johnson (privately) : was that a vid or live? (Toronto
              UC)
19:27:51      From FlyingPerv : u like? (Non-U.S. target)
19:28:15      From nyc perv : oh yeah (Scott Lane)
19:29:12      From YngCanPigPerv : SMOKE TIME? (Non-U.S. target)

Augusta disconnected from that "Application A" room at approximately 19:39, and

reconnected about an hour later at 20:33. He stayed in the room for another 48

minutes until about 21:22 EDT.

A forensic analysis of Heatherly's electronic devices revealed the presence

of Application A on his devices, as well as additional evidence that he engaged in

viewing and accessing child exploitation material.  For example, Defendant

Heatherly possessed images of infants being orally raped, as well as toddlers being

anally raped on his devices.

Heatherly attempts to make an arguments centered around whether the United States provided U.S. Probation a Statement of Facts in this case or not. However, in this matter, the evidence and facts were presented in open court to be decided by the jury.  All parties have access to the transcript of the trial.  The United States has no better access or recollection to what occurred at the trial than any other party.  The evidence presented at trial and the transcript produced are the best evidence of the facts in this case.

In his arrest interview, which was admitted at trial, defendant Heatherly made inculpatory statements. For example, in a recorded post-*Miranda* interview, Defendant Heatherly admitted that he used the alias "Daniel Sotherland," which was the same alias used on "Application A" on July 22, 2015, and that he had used that alias for approximately 10 years for the purpose of looking at pornography. Additionally, Defendant Heatherly admitted that he had accessed "Application A," viewed child pornography on that site, and even met individuals in person who he knew to be pedophiles. On multiple occasions, he invited pedophiles he met online to come to his residence where they viewed child pornography together and engaged in sexual conduct with each other while watching the child pornography. Defendant Heatherly further admitted that when he made the comment "so close here" on July 22, 2015, he was masturbating.  Additionally, Defendant Heatherly

admitted that the comment "so appreciate if someone would show vids – need to bust before work" was also likely something he would have said.

Forensics evidence illustrated Heatherly, as well as Staples and Augusta were in the exact same chat room with known distributors of child pornography and known facilitators of child pornography rooms at different points through time. For example, the United States presented evidence at trial that established Staples, Augusta, and Heatherly had been in chat rooms with Casey O'Dell—the facilitator/host of the July 22nd chat room and a co-conspirator in this case—on February 10, 2015 (Augusta); May 10, 2015, February 6, 2015, and December 22, 2015 (Staples); and July 4, 2015 & December 17, 2015 (Heatherly).  *See* Tr. Vol. 4, 532: 10 - 534:24-25.  Thus, the this Court can reasonably conclude that the frequency with which Heatherly interacted with known distributors of child pornography in an online space specifically for the distribution and receipt of child pornography was sufficient evidence to establish Heatherly agreed with the criminal activity occurring in those rooms, including the posting of notices and advertisements seeking to receive child pornography.

The United States also provides this evidence to rebut Heatherly's argument that he was not in this online room for like-minded child pornographers to view children being exploited and "another video that was playing."   Def's Sent. Memo at *6.

### C. U.S. Probation properly applied the cross-section at §2G2.1.

As the United States submitted in its objections to the PSR, "relevant conduct" is a broad concept.  It includes conduct found by a jury, admitted by the defendant in a guilty plea, uncharged conduct and acquitted conduct.  Appellate courts generally affirm the district courts use of acquitted conduct at sentencing, if the district court has made a finding by a preponderance of the evidence that the conduct occurred.

The U.S. Supreme Court has also held the use of acquitted conduct at the time of sentencing presents no double jeopardy issue. *See United States v. Watts*, 519 U.S. 148, 151 (1997).

In *Watts*, the Supreme Court resolved a circuit split (where the only circuit causing a split was the 9th Circuit) in favor of permitting a sentencing judge to use acquitted conduct to increase a defendant's Guidelines and ultimate sentence.  In *Watts*, the jury convicted a defendant of possession with intent to distribute cocaine, but acquitted him of using a firearm in relation to a drug trafficking offense. The jury convicted the *Watts* co-defendant of one drug trafficking count, but acquitted him on another. The Ninth Circuit reversed the district court's sentencing that relied on acquitted conduct.

The Supreme Court reversed the Ninth Circuit, noting that every other circuit to have addressed the issue found the use of acquitted conduct permissible,

including the Third Circuit in *United States v. Ryan*, 866 F.2d 604 (3d Cir. 1989).

*See Watts*, 519 U.S. at 151.  The *Watts* Court explained the Guidelines themselves,

in the background to § 1B1.3, conclude "[r]elying on the entire range of conduct,

regardless of the number of counts that are alleged *or on which a conviction is*

*obtained,* appears to be the most reasonable approach to writing workable

guidelines for these offenses." *Watts*, 519 U.S. at 153.

The use of acquitted conduct is also reasonable as a policy matter, because

"an acquittal is not a finding of any fact. An acquittal can only be an

acknowledgment that the government failed to prove an essential element of the

offense beyond a reasonable doubt. Without specific jury findings, no one can

logically or realistically draw any factual finding inferences." *Watts*, 519 U.S. at

155 (quoting *United States v. Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996) (Wallace,

J., dissenting), *cert. granted, judgment rev'd sub nom. United States v. Watts*, 519

U.S. 148 (1997). Thus, an acquittal does not operate as issue preclusion when

presented in a "subsequent action governed by a lower standard of proof," such as

preponderance of evidence at a sentencing hearing. *Watts*, 519 U.S. at 156 (quoting

*Dowling v. United States,* 493 U.S. 342, 349 (1990)).

The evidence outlined above which was adduced at trial establishes by a

preponderance of evidence that Heatherly engaged in substantive acts of

advertising, as well as conspiracy to commit advertising of child pornography.

Accordingly, the cross-reference to § 2G2.1 should apply, resulting in a base offense level of 32, and upward adjustments under subsections (b)(1)(A) (under the age of 12), (b)(2)(B) (forcible rape), (b)(2)(4)(A) (sadistic conduct), and (b)(2)(6)(B) (use of a computer), for a combined adjusted offense level of 46.

The United States did file objections to the PSR on November 30, 2018. Heatherly never responded to those objections. U.S. Probation issued the final PSR on April 26, 2019, finding the cross-reference did apply.  The final PSR is accompanied by a standard Addendum cover sheet, which states:

> [t]he parties are asked to note that the guideline calculations have been amended based on the objection set forth in the Government's objections.  The probation officer agrees that the cross-reference at USSG §2G2.1(c)(1) should be applied to this case.  Accordingly, paragraphs 25 through 30, 34, 37, 64 and 76 have been amended.

Heatherly now expresses surprise and dismay that U.S. Probation considered the United States' submission and suggests the probation officer engaged in some nefarious action by providing "no indication that the [officer] intended on incorporating the Governments' 'objections' until the final PSR, along with an Addendum attaching the Governments' Brief…"  The defendant then points out the probation officer then "submitted [the PSR] directly to the Court…456 days after trial and over a year after [the defendant's] PSR interview." Def's Sent. Memo. at *3.

The probation officer's handling of this case has been absolutely standard, as far as the United States is aware.  She attached the United States' objections, what the defendant referred to as the "brief" to the Addendum, just as the officer does in any case, where a party files objections.  The officer considered the filed objections, just as the officer does in every case, where a party files objections. The officer provided the PSR to the Court and on the sealed docket for the parties, as every probation officer does in each case, at least as far as the United States is aware.

### D. Nature and Circumstances of the Offense, and the History and Characteristics of the Defendant

It is difficult to overstate the egregious nature of Heatherly's conduct, it simply shocks the conscience. To participate in the sexual exploitation in anyway of a 6 year old boy bespeaks of true cruelty.  There can be no explanation, justification or mitigation for the types of vile offenses committed by Heatherly and his co-defendants upon the victim in this case.  The victim of his crimes – the child depicted during the worst moments of his life – is the one who experiences and will continue to experience challenges beyond imagination.

Heatherly contends the United States is "[speculating] that [his] comments are directly related to the entry of Augusta into the room, and in the encouragement of the abuse [Augusta] perpetrated on his victim.  As a result, they reason

16

[defendant Heatherly] should be held criminal responsible for [co-defendant Augusta's] actions." Def's Memo. at *5-6.  Nothing could be further from the truth.  Heatherly must be held responsible for Healtherly's depraved actions in that online chatroom.  That is why the United States charged the Superseding Indictment as it did because that is what the evidence indicates.  Most certainly Augusta should – and has been – held accountable for the role he played in the depraved abuse of the victim.  However, what has always made this case different, more disturbing, more frightening and frankly what we can expect to see more of in the future.  No longer do we have just co-defendant Augusta brutalizing a 6 year old for his own sexual gratification.  Now, we have that, plus the voyeuristic aspect of his streaming that indescribable abuse online for literally almost anyone to watch.  To record.  To take screenshots.  To distribute.  Where does it end?  For the victim, it will never end.  Because he will never, ever have the peace of mind of knowing whether any of those things happened.  Yes, evidence of that session was not found memorialized on defendant Heatherly's devices.  Little comfort to the victim.

Heatherly wants this Court to find that it is possible that he was in this online chat room but was not engaged with his fellow pedophiles.  Even though, the evidence at trial established that Heatherly had been in this exact same online chat room with some of these same pedophiles before.  Even though, he admitted

to viewing child pornography using the "Application A" platform.  In Heatherly's
memo he cited to some of Detective Constable Janelle Blackadar's testimony on
January 17, 2018 but none of her later testimony when she was recalled by the
United States on January 22, 2018.

Detective Constable Blackadar explained to the jury she took a screen
capture showing "Application A" user "Daniel Sotherland" at 6:22pm.  *See* Tr.
Vol. 5, 684, 21.  Detective Constable Blackadar captured a 7 minute video that
began at 6:16pm and was streamed by user "babybutcher" on July 22, 2015.  At the
Heatherly trial, it was admitted as Government's Exhibit 5 through Blackadar.  She
described it as showing an "Asian prepubescent child, probably seven or eight, I
believe engaged in poral sexual acts with an adult male."   *See* Tr. Vol. 5, 684, 16-
18.  When asked if that exhibit played just before the screen capture of Sotherland,
Blackadar responded yes.  *See* Tr. Vol. 5, 685, 3-5.

Blackadar goes on to testify about Government's Exhibit 6, which she
describes as a 3 minute and 25 second video, that began at 6:41pm, of a black adult
male who is forcing a prepubescent 7 year old to engage in oral sex acts with him.
*See* Tr. Vol. 5, 685, 20-25.   Government counsel then asks Blackadar following
this video being streamed to the room, "Guy Johnson subsequently says, if you like
that one, that me and my f-toy [victim 1's name], and then says, Pennsylvania with
a toy if you can visit?"  *See* Tr. Vol. 5, 686, 1-5.  And the witness replies yes.

18

Heatherly's victimization requires increased punishment to reflect the seriousness of his offenses. His crimes were not isolated incidents, but rather a pattern of abuse. The nature and circumstances of these offenses – namely depraved conduct that occurred over a period of time when he was a custodian or caregiver to Victim-1 – requires a substantial sentence, the sentence of life in prison, to reflect the seriousness of the offense, serve the ends of justice and protect the community.

### E. Seriousness of the offense, Promoting respect for the law

In fashioning an appropriate sentence for defendant Heatherly, pursuant to 18 U.S.C. § 3553, this Honorable Court shall consider the seriousness of the offense, promote respect for the law, and provide just punishment to a defendant. These factors are collectively known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S. Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Because the "punishment should fit the crime, the more serious the criminal conduct is, the greater the need for retribution and the longer the sentence should be. The seriousness of the crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *Id.*

This concept is especially applicable in the instant case, because "child sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id.; see also United States v. Foss*, 501 F.2d 522, 527 (1st Cir. 1974) (cited with approval in the legislative history of Section 3553(a)) ("[T]he view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others .... This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others.").

The Third Circuit reversed a sentence that was too lenient in a child pornography case, explaining that the children's "injuries and the taking of their innocence are all too real" in such cases. *United States v. Goff*, 501 F.3d 250, 258 (3d Cir. 2007).  Indeed, Defendant Augusta's allowing dozens of people around the world to watch and record while he sexually abused Victim-1 means that abuse is perpetuated forever. *See id*. at 259 (citing *New York v. Ferber,* 458 U.S. 747, 759 (1982)) ("The materials produced are a permanent record of the children's

20

participation and the harm to the child is exacerbated by their circulation."); *see also Osborne v. Ohio,* 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.").

The *Goff* court further observed that when Congress passed the Child Pornography Prevention Act of 1996, it found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Goff*, 501 F.3d at 259 (citing Child Pornography Prevention Act of 1996 ("CPPA"), Pub.L. 104–208, sec. 121, 110 Stat. 3009–26, reprinted in 18 U.S.C. § 2251 note at 611).

Relying largely upon *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), Heatherly urges this Court to give little deference to the sentencing guidelines in a very generalized and brief argument.  In affirming the district court's decision not to apply the sentencing range recommended for Grober under U.S.S.G. §2G2.2 in a "typical downloading case," the Third Circuit emphasized "we do not hold that §2G2.2 will always recommend an unreasonable sentence, and district courts must, of course, continue to consider the appellate Guidelines range."  *Id.* at 609.  This case is certainly not typical.

More recently, in *United States v. Sheridan*, 503 Fed.Appx. 101, 103, 2012 WL 5458404 (3d Cir. 2012), the Third Circuit affirmed this Court's decision to impose a 360 month sentence for distribution of child pornography.  Like Heatherly, Sheridan requested a significant departure from the guidelines range of 360-480 months down to 180 months.  Sheridan advanced similar arguments, specifically that the child pornography guidelines are unreasonably severe and deserve less deference due to the *Grober* decision.  *See id.* at 102.  The *Sheridan* Court held this Court's sentence of 360 months was reasonable emphasizing that *Grober* does "not hold that §2G2.2 will always recommend an unreasonable sentence." *Id.* at 103.  It merely requires careful application.  *See id.* at 102.

A sentence of 480 months will show Victim-1 that the defendant cannot escape justice.   The harm caused by the proliferation of these child sexual abuse images is untold.  For these reasons, only a significant sentence of incarceration will promote respect for the law and provides just punishment given the serious nature of the Heatherly's criminal offenses. *See* 18 U.S.C. § 3553(a)(2)(A).

## F.  The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See Rita v. United States*, 551 U.S. 338, 349 (2007).  In fact, courts have placed a high importance on the need for deterrence in cases of hands-on sexual

abuse of children due to the "heightened concern in sex offense cases with an offender's potential for recidivism." *United States v. Armendariz*, 451 F.3d 352 (5th Cir. 2006). In *Armendariz*, the Court of Appeals vacated and remanded for sentencing a district court's sentence of five years imprisonment with no supervised release because the sentence did not sufficiently consider the need for the sentence to deter the defendant and to protect the public.  Specifically, the Court noted that, "[e]specially in the case of a sex crime – and particularly for one involving a child – the need for deterrence, protecting the public, and providing the offender with necessary correctional treatment are highly relevant factors that should have been effectuated in the sentence that the district court imposed." *See id.* at 362;  *see also United States v. Jones*, 289 Fed. App'x 798 (5th Cir. 2008); *United States v. Planck*, 493 F.3d 501, 506 (5th Cir. 2007).  Similarly, in *United States v. Gonzalez*, the Fifth Circuit approvingly quoted the sentencing judge's rationale for a Guidelines departure:

> The court's experience with these sorts of folks is that they never get better. Sex offenders have the lowest rate of recovery and the highest rate of recidivism of any criminal defendant. This is an addiction that is almost impossible to overcome. And I think for the benefit of society and for the benefit of the protection of those who are victimized by these sorts of crimes to prevent this individual being a proven consumer of this creating a lifeline, as it were, to this kind of insidious industry requires a lifetime of supervision.

*United States v. Gonzalez*, 445 F.3d 815, 819-20 (5th Cir. 2006) (quoting sentencing court).

To the extent the defense argues for a lesser sentence, there is ample evidence that even old men commit horrible crimes against children. *See United States v. Berwager*, No. 1:16-CR-177 (MDPa).  A man with no prior criminal history, a man with a distinguished military record and a supportive family, sexually assaulted, molested, raped, produced and distributed child pornography involving his own very young family members while he was in his 70s.  Judge Jones sentenced Berwager to 240 months at the urging of the family.[2] *See also United States v. Seljan*, 547 F.3d 993, 997–98 (9th Cir. 2008) (en banc) (87–year–old defendant sentenced to 20 years for sexually abusing children); *see also United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008) (73–year–old man sentenced to 20 years for enticing or coercing an 8–year–old girl into sexually explicit conduct which he photographed). Indeed, even if Defendant were imprisoned long enough that he would be *less likely* to commit sexual assaults on children, scholarly research in this area demonstrates that sexual predators will simply change their *modus operandus*.

> Generally, older sex offenders engage in more passive sexual activity as compared to their younger counterparts. For example, fondling by elderly offenders is more prevalent than intercourse. Research has shown that elder offenders are more likely to commit 'nonviolent' sexual offenses such as pedophilia or exhibitionism as opposed to 'violent' offenses such as forcible rape. Specific examples of these 'nonviolent' offenses include improperly touching an acquaintance,

---

[2] The statutorily authorized maximum on the production of child pornography was 360 months.

statutory rape, exposing of the genitals (usually to a minor), and other acts of exhibitionism.

Matt Hart, *The Geriatric Sex Offender: Senile or Pedophile?*, 32 Law & Psychol. Rev. 153 (2008).  Accordingly, a sentence of 480 months is imperative to adequately protect the community from the defendant.

### G. The Need to Avoid Unwarranted Sentencing Disparities

The recommended Guidelines sentence of 480 months is a reasonable sentence for defendant Heatherly.  It is sufficient but not greater than necessary to achieve the §3553 goals.  Heatherly alleges his case is most like that of co-defendant Ed Westbury, who pleaded guilty to conspiracy to receipt and distribution of child pornography and received a sentence of 78 months. The remaining co-defendants, who engaged in conduct much more similar to Heatherly's conduct, received sentences from 16 to 60 years, are listed below.

- William Augusta = 60 years in prison, lifetime of supervised release.
- Matthew Fensler, 35 years in prison, 15 years of supervised release.
- David Sewell = 35 years in prison, 15 years of supervised release.
- Moises Marquez, 30 years in prison, 15 years of supervised release.
- Jason Bolden = 30 years in prison, 10 years of supervised release.
- Franklyn Molina = 195 months in prison, 15 years supervised release.
- Casey O'Dell = 40 years in prison, 15 years of supervised release.
- James Reese = 20 years in prison, 10 years of supervised release.
- Paul Stamm = 30 years in prison, 15 years of supervised release
- Christopher Wehr = died prior to sentencing
-  Bruce Edgecombe = died awaiting trial

- Scott Lane = pending sentencing
- William Staples = pending sentencing

A sentence of 480 months will result in a sentence that is not disparate to other co-defendants and is appropriate given Heatherly's conduct.

### H. Lifetime Supervised Release is Reasonable and Appropriate

The United States respectfully requests this Court to impose a term of supervised release that extends for the life of Heatherly. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration. *See United States v. Granderson*, 511 U.S. 39, 50 (1994). If being on supervised release were the punitive equivalent of being in prison, and if it served the "just desserts" function, there would be no need to put most criminals in prison. *See Irey*, 612 F.3d at 1210. The life term recommendation contained in Section 5D1.2(b) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. *See* H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because there is no reason to believe that the need for supervision inherently decreases with time in sex crimes cases, Congress found lifetime supervised release to be appropriate, and thus directly inserted such a recommendation into the Guidelines. *See id*.  More specifically, the passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of federal judges and

prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. Many of these offenders need long term or lifetime monitoring and oversight. *See* H.R. Conf. Rep. No. 108-66, at 49-50 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 684.

Courts have routinely affirmed lifetime supervised release for criminal conduct. *See United States v. Ortega*, 485 Fed. App'x. 656, 659 (5th Cir. 2012) (lifetime supervised release appropriate when defendant used the internet to induce a minor to engage in sexual activity); *United States v. Antone*, 375 Fed. App'x. 752, 753 (9th Cir. 2010) (affirming lifetime supervised release following convictions for Title 18 U.S.C. §§ 2243(a), 2246(c), and 1153(a)). A term of supervised release for life is reasonable and appropriate in this case to achieve rehabilitative ends and to protect children from further victimization.

## I. Conclusion

When the Court considers all of the factors enumerated in 18 U.S.C. § 3553(a), a sentence of 480 months is the only reasonable and appropriate sentence for this defendant.

Victim-1 has a lifetime of hard conversations. To really know Victim-1 is to know about what this co-defendant and his co-conspirators caused to occur to him.

Forevermore, Victim-1 will have to have embarrassing, stressful, awful

conversations with every friend he ever has, every person he ever dates seriously,

and some day—if he lives that long—his own kids.  It is one of the burdens that

this defendant and others saddled this boy with for the rest of his life. It is an

albatross of anxiety whose stinking, rotting corpse cannot be buried, but instead

must be shouldered by this boy until he is laid to eternal rest.  His life is forever

changed in the most profound ways; at the very least, Heatherly's life should be

behind bars for an extremely significant period of time, where Victim-1 and other

children, like the other victims in the images on the devices seized from his

residence, cannot be further harmed by him.

 The 480 month sentence requested by the United States is reasonable given

the defendant's criminal conduct. Moreover, it will promote respect for the law,

protect the public from future crimes of the defendant, serve to deter the behavior

exemplified by the defendant and avoid unwarranted sentencing disparities among

similarly situated defendants.

       David J. Freed
       United States Attorney

     By: /s/ Meredith A. Taylor
       MEREDITH A. TAYLOR
       Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **NO. 1:16-CR-82** |
| | ) | |
| **v.** | ) | **(Judge Yvette Kane)** |
| | ) | |
| **DYLAN HEATHERLY,** | ) | |
| **aka "Daniel Sotherland"** | ) | |
| | ) | **(Electronically Filed)** |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the

United States Attorney for the Middle District of Pennsylvania and is a person of

such age and discretion to be competent to serve papers.

That this 5th day of June 2019, she served a copy of the attached

**UNITED STATES' SENTENCING MEMORANDUM**

by electronic means by sending a copy to the e-mail addressees stated below:


Robert Daniels, Esquire
rdaniels@killiangephart.com

Crystal Bard, Senior Probation Officer
crystal_bard@pamp.uscourts.gov


/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant U.S. Attorney